CLOTILDE, CARMEN and PURA LARROCA TARAZONA, the first assisted by her husband JUAN HERNÁNDEZ ORCASITAS, Plaintiffs and Petitioners, *v.* MARÍA ABOY WIDOW OF PÉREZ PIERRET and THE SECRETARY OF THE TREASURY OF PUERTO RICO, Defendants and Respondent the latter.

No. 12368.   Submitted April 22, 1960.—Decided April 26, 1961.

*Carlos D. Vázquez* for petitioners Carmen and Pura Larroca. *J. B. Fernández Badillo, Secretary of Justice, Arturo Estrella,*

*Assistant Secretary of Justice* and *Edgar S. Belaval, Assistant Attorney General,* for respondent.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

The sisters Clotilde, Carmen and Pura Larroca Tarazona sued María Aboy widow of Pérez Pierret and the Secretary of the Treasury of Puerto Rico alleging that they are the owners of a 425.71 square meter lot located on Hernández Street, Santurce, on which there is a two-story concrete house with garage and servant quarters, such property being recorded in the Registry of Property of San Juan in the name of the defendant María Aboy widow of Pérez Pierret; that said real property was acquired in 1938 in trust by María Aboy widow of Pérez Pierret, with the proceeds from donations made by Antonio Pérez Pierret, her husband already deceased, and from his sister Angela Pérez Pierret to their nieces the plaintiffs herein; that the title on the above-described real property was recorded in the name of María Aboy to guarantee that the plaintiffs would not alienate the property during their youth and preserve it as their patrimony; and even though María Aboy knew that the described lot was and is the property of the plaintiffs and was recorded in her name for the reasons above-stated, she refuses to transfer the title thereto notwithstanding the demands made upon her to do so. They also contend that the donations made by Antonio and Angela Pérez Pierret to their nieces were made prior to the year 1938, the act that levies gift taxes not being in effect and that therefore are not indebted to the People of Puerto Rico for any amount on that account. In their prayer of the complaint they asked that judgment be rendered directing the Registrar of Property of San Juan to record said property in favor of the plaintiffs and *to declare* that they are not indebted to the Secretary of the Treasury for any amount on gift taxes.

480

The defendant María Aboy did not appear and her default was entered. The Secretary of the Treasury answered denying the facts of the complaint because of lack of information and belief and alleged as a special defense, that if the same were true, the plaintiffs would have to pay the gift taxes because said donation would be without effect until the judgment of the court declaring as proven the facts alleged in the complaint should became final.

The undisputed evidence presented only by the plaintiffs established the following: According to the testimony of Mr. Salvador Suau Carbonell, attorney-at law, the plaintiffs, who were single, were in a precarious economic situation during the lifetime of their father who suffered a prolonged illness the situation becoming worse after his death. In order to provide them with some protection, their uncle Antonio and their aunt Angela Pérez Pierret, the latter the wife of the witness, granted a property consisting of a lot which was community property of the Suaus, and of a house that was built by Antonio Pérez Pierret on said lot with his own money. The property was sold by Antonio without the plaintiffs having lived in it and with the proceeds thereof they created a separate fund on their behalf which was reinvested, among other things, in a mortgage on another property located at Union Street, Miramar. This property having been purchased it was sold by Antonio Pérez Pierret and with the proceeds thereof the lot in question located at Hernández Street, Santurce was bought in the name of the defendant María Aboy, already the widow of Antonio Pérez Pierret, and a two-story building was constructed, it being necessary to take in a mortgage the additional sum of $1,766.86. The plaintiffs occupied the second story of the building ever since it was erected while the main floor was devoted to rental. With the rents they eventually paid said mortgage. Mr. Suau testified that María Aboy had never denied that the property belonged to the Larroca sisters and,

on the contrary, she had been constantly concerned and desirous that it be transferred to them as soon as possible in order to avoid that they be left hanging on air, and had always admitted that said sisters were the absolute owners of said real property.

By deed No. 17 executed before the Notary Celestino Iriarte, Jr., at San Juan on March 8, 1938, Luis Fernández Cuyar sold to María Aboy widow of Pérez Pierret the lot here involved consisting of 425.71 square meters, located at Hernández Street, Santurce. The sale was made for the amount of $2,554.26, which amount the buyer, María Aboy, delivered before the notary. On the witness stand Luis Fernández Cuyar, testified that he sold the lot at the request made by Angela Pérez Pierret, who begged him to sell it to her so that the Larroca sisters could build a house, and that the whole transaction was made with María Aboy but for the sole purpose of building the house that stands there now for said sisters. The witness said that María Aboy herself had stated then that the Larroca sisters had sold a property which they had in Miramar and wished to invest the available proceeds in the purchase of a lot of less value so that they could use part of the money to build a house. The house was built and from the very first moment the plaintiffs occupied the second floor of the house and were still occupying it.

The plaintiff Pura Larroca testified that her uncle Antonio and her aunt Angela Pérez Pierret were rich and solvent persons who had always treated them as their parents, as if they were their own daughters. They had given them a lot on Suau Street on which they built a house for them. Having sold this property, the proceeds were invested in a mortgage on another house on Union Street, constituted in the name of Antonio Pérez Pierret and his wife, according to deed No. 6 of February 9, 1928 before the Notary José Hernández Usera. On May 29, 1929 the plaintiffs acquired the mortgaged property by virtue of a certificate of sale

issued by the collector at a tax sale amounting to $97.30. By deed No. 38 of December 10, 1937 before notary Salvador Suau, the plaintiffs sold it to María Aboy for the amount of $3,000 which they confessed having received before the execution of the deed, but which they actually did not receive. Subsequently, the property on Union Street was sold for approximately $7,000 and with the proceeds thereof the lot at Hernández Street was purchased in the name of María Aboy and the house was built, for which it was necessary to obtain the additional amount of $1,766.86 by mortgage on the same real property according to deed No. 7 of January 30, 1939 before notary Luis Ríos Algarín. The plaintiffs since the time it was built in 1938, always occupied the second floor as their residence, devoting the main floor to rental and with which they paid the mortgage of $1,766.86 on February 12, 1946. The record shows that the plaintiffs were always considered as the beneficiaries of the investment funds abovementioned, even though because of their young age and in order to protect them, they appeared in the name of their uncle Antonio Pérez Pierret and once dead in the name of his widow, and they were always considered publicly as owners of the property in question, enjoying the property as well as its rent. Similarly to Mr. Suau the witness testified that the defendant herself María Aboy wanted the property to be transferred to the plaintiffs and that she had never denied that they were the owners.

With that evidence the trial court decided correctly as a matter of fact that the property belonged to the plaintiffs, and it so provided in its judgment. It made the following conclusions of law:

"It having been established as a matter of fact, that the property described belongs to the plaintiffs, there remains the legal question as to since when, in a valid sense, the plaintiffs are the owners of the real property. Albeit that the purpose of Antonio and Angela Pérez Pierret was to donate to plaintiffs, since 1937 a property that could be used as a dwelling for the

sisters and as basic capital to them, the truth is that according to our Civil Code and our applicable case law 'in order that a gift of real property may be valid it shall be made in a public instrument, stating therein in detail the property bestowed as a gift and the amount of the charges, which the donee must satisfy.'

" 'The acceptance may be made in the same instrument bestowing the gift or in a different one; but it shall produce no effect if not made during the life of the donor.'

" 'If made in a different instrument the acceptance shall be communicated to the donor in an authentic manner, and this proceeding shall be recorded in both instruments.'—Section 575 of the Civil Code, 31 L.P.R.A. § 2010.

"It has been established by our case law that a gift that does not comply with this section is not only voidable but nonexistent. Therefore, we must support the Secretary of the Treasury, the codefendant herein, in the sense that for the purposes of the Inheritance Tax Act, *it is by the pronouncements of the judgment that we are about to render that the title of the property will legally pass in favor of the plaintiffs and for which the plaintiffs shall have to pay the gift tax* except the improvements that the plaintiffs may be able to prove to the Secretary of the Treasury that they have made on said property with their own money and also deducting the aforesaid $1,766.86 which were paid by the plaintiffs from the rents of the property. Those rents constituted a personal property gift which according to § 575 of our Civil Code is valid since there existed the verbal and actual donation of those rents which were delivered to and accepted by the donees."

Pursuant to such findings the court decreed that the plaintiffs are bound to pay the gift tax deducting from the value of the property the amount of $1,766.86 as well as any capital improvement that the plaintiffs might have made with their own money on said property.

The appellants contend before us that the trial court erred in deciding that this case involves a gift of real property and not a "constructive" trust; in deciding that even if it was a donation of real property the same was void because the requirement of a public deed had not been complied with and

upholding that there was such deed; in deciding that the plaintiffs were bound to pay the gift tax when they acquired the property received. It may be noted that all the errors assigned touch on the aspect of the case relating to the payment of gift taxes. Furthermore, the testimony of Mr. Suau in the record and of one of the plaintiffs as to the attitude of the defendant María Aboy, and her nonappearance to defend herself, tend to indicate that this case was basically prosecuted with a view to obtaining a tax pronouncement on the question raised therein.

We understand that the trial court lacked the power and jurisdiction in the proceeding now before use, to consider and decide whether or not the payment of a gift tax lay, and since the lower court lacked said power at law, neither can this Court consider and decide on appeal the merits of the tax pronouncement. It is a well-settled principle that ordinarily a judicial action requiring a decision as to whether or not a tax should be levied and collected or as to whether or not there exists the obligation to pay, is a suit against the sovereign and requires the consent of the State to be sued.

In such case we must strictly follow the means and manner to sue fixed in the consent, and all prerequisites established by the State to be sued must be complied with, in the absence of which the Court lacks jurisdiction, if by the latter is meant its power to entertain a specific suit or matter and to decide it. Such power can neither be invoked nor upheld on the ground that the action is one of the declaratory type even under the statutes that permit the party to obtain a declaratory judgment. *La Correspondencia de Puerto Rico* v. *Treasurer,* 58 P.R.R. 682; *Nazario* v. *Gallardo, Treasurer,* 40 P.R.R. 760; *Standard Comm. Tob. Co.* v. *Tax Court,* 71 P.R.R. 701; *Mayagüez Light P. & I. Co.* v. *Tax Court,* 68 P.R.R. 482; *Monge* v. *Tax Court,* 68 P.R.R. 594; *Méndez* v. *Buscaglia, Treasurer,* 64 P.R.R. 707; *Gómez* v. *Tax Court; Treasurer of P. R., Int.,* 73 P.R.R. 431; *Valiente & Co.* v.

*Cuevas, Com'r,* 65 P.R.R. 169; *Bonet* v. *Yabucoa Sugar Co.,* 306 U.S. 505. *Cf. Cafeteros de P. R.* v. *Treasurer,* 74 P.R.R. 704 and *Cooperativa Cosecheros de Café* v. *Treasurer,* 69 P.R.R. 210. *Cf. Great Northern Ins. Co.* v. *Read,* 322 U.S. 47; *Ford Co.* v. *Dept. of Treasury,* 323 U.S. 459.

■ At the time of filing the complaint in this case the consent appeared in the Commonwealth Judiciary Act of July 24, 1952 upon providing in § 13 (*a*) 2—4 L.P.R.A. § 121 (*a*) 2 that the Superior Court will know . . . . "Of all cases, actions, proceedings or extraordinary legal remedies *in connection* with or affecting the levy, collection and payment of all kinds of taxes, including . . . inheritance and gift taxes". . . .[1] Complementing the aforesaid provision is § 1 of Act No. 235 of May 10, 1949—13 L.P.R.A. § 281 which provides that: "In all cases of the jurisdiction of the Tax Court" [Superior Court—§ 13 (*a*) 2 of the Judiciary Act] *"the procedure* established to appeal before the Superior Court *shall exclusively govern."* Section 2 A 4 of said Act No. 235—13 L.P.R.A. § 282 A 4, prescribes the "manner", "term," and the "previous" compliance with the requirements that must be observed to appeal to the Superior Court to litigate inheritance and gift taxes. See also § 7 of Act No. 99 of 1925—13 L.P.R.A. § 896.

Since the beginning of the creation of the first Tax Court in 1941 when the public policy which prevailed until then requiring the payment of all taxes in order to litigate for its refund was modified, there has also existed another public policy, fixed and invariable to the effect that before bringing the tax controversy to the courts there must be an administrative determination thereon of final character. Such pre-

---

[1] Formerly, the consent to be sued was granted in similar terms by Act No. 328 of May 13, 1949 creating the Tax Court, § 2; Act No. 169 of May 15, 1943, § 4; Act No. 172 of May 13, 1941, § 4 as it was amended by Act No. 32 of November 21, 1941. In other words, by different acts since the beginning of the century which authorized to sue for the recovery of taxes paid under protest.

vious administrative determination is an essential requirement for the consent granted which must be complied with.[2] The reasons for such public policy are obvious. Aside from an orderly conduct of the tax controversies and of the establishment of definite terms of prescription within which a suit may be filed in court, there was reserved for the Secretary of the Treasury the decision in the first instance of such controversies, inasmuch as the responsibility fell upon him and not on the trial courts to establish the tax laws and the state's public policy in general. Furthermore, the Legislature intended to prevent the issuance of pronouncements that might affect the public treasury, in relation to the levy and collection of taxes or their amount, in collateral incidents within another type of litigation, possibly without all the necessary elements of judgment even where the Secretary of the Treasury is made a party, indirectly circumventing compliance with the requirements and conditions fixed in the consent to sue. An illustration of this is the case at bar. Although the pronouncement was favorable to the treasury (it could have been against it) the court fixed limitations in the imposition which involve standards that had not been considered by the Secretary of the Treasury, as to the determination of the "value" of a gift or the permissible deductions against the same.[3]

---

[2] In addition to including the requisite in proceedings relating to each particular tax, the very Acts No. 172 of 1941, No. 169 of 1943 and No. 328 of 1949 creating the former Tax Courts provided that the jurisdiction of the court may not be pleaded by any person "until there has been a proper administrative decision in the matter on the part of the Treasury of Puerto Rico in accordance with law."

[3] See also *Cervecería India Inc.* v. *Secretary of the Treasury*, 80 P.R.R. 262, in which a final administrative determination existed to the effect that certain industrial equipment was not exempt from tax under § 16–B of the Internal Revenue Law and the judgment of the Superior Court deciding the case on the merits was reversed for lack of jurisdiction, upon its failure to pay the taxes first, for which reason there was no administrative determination denying its refund; and *The Texas Co.* v. *Tax Court*, decided on March 2, 1961, *ante*, p. 129, *which* affirmed the refusal of the Superior Court to decide an aspect of the case because the taxpayer

The judgment appealed from will be modified, eliminating therefrom any conclusion or pronouncement relating to the gift tax, and as modified it will be affirmed.

had not submitted certain evidence on breakage or loss to the Secretary during a specific period fixed in § 16-C (b) of the Internal Revenue Law, there being, therefore, no administrative determination on that fact before the controversy was litigated in court.